Please call the next case, last case of the morning. 4130165, API Construction Company v. Workers' Compensation Commission. May it please the Court. Counsel. My name is Pete Sink and I represent the Respondent-Employer API in this claim. What we're appealing this on is really asking the question and making the statement that it makes a difference in this case as to whether the claimant alleged a repetitive stress injury or a specific accident. And the determination of that question dictates how much DTD, how much medical care, and what body parts actually are included in this claim. So your threshold issue is the commission improperly, or your argument is the commission improperly assumed the case was repetitive trauma when the claimant alleged a specific accident. That's correct. And so if that's the case the commission cannot, you know, find the way they did, why is that? Well, what we're saying is in the cross-examination of the claimant on his at-trial he specifically indicated if any of the medical records say other than this was a specific incident wherein I grabbed a wire dipper with both of my wrists and twisted it and that was the accident, they are all incorrect. So if the commission then finds that this is a repetitive stress case, their finding has to be against the manifest rate of the evidence because the claimant himself is saying if anything else is said in terms of records, they're incorrect. That is not my testimony. Getting to that, if it's a specific incident on the date, as Petitioner says, then arguably he would have potentially bilateral risk injuries. And what we're saying there is the defense then to the bilateral risk injuries would be that they were so degenerated prior to the date of the accident that any activity of daily living would or could have broken out the season. Do you punish the claimant because he incorrectly labels the cause of this condition of ill-being? Is that the purpose of the act? I'm not suggesting that that's the purpose of the act or that we punish the claimant. What I am suggesting is the facts in this case don't just suggest that he didn't know what the case, what happened to him. The evidence suggests that he was warned that the entire second shift of API was being put on layoff on April 8th. He went into the doctor with his supervisor on April 8th, the very first doctor's visit, and it states right in the MOHA record, API is laying off the entire second shift at the end of this week. So there's clear evidence in the record that Mr. Richards knew he was leaving his job. There's also clear evidence that he had just started that job seven weeks before. But if we're going to look at this as a repetitive stress claim, then we have to look at what the courts have always held in terms of repetitive stress. It should be repetitive enough, with force enough, and for a sufficient length of time enough to have created the condition. It is an aggravation of a pre-existing condition then. Correct. I mean, the bottom line is you want to argue this as a specific injury case because you don't have much of an argument if it's viewed as a repetitive trauma. Well, I think I do have much of an argument if it's reviewed as a repetitive trauma case. Well, I mean, are you saying, I mean, the crux of your argument is, are you saying the commission does not have the authority if a claim is alleged as a specific injury to grant benefits based on repetitive trauma? I'm absolutely not saying that they don't have that authority. What I'm saying is if they did find this as repetitive trauma case, then how? This claimant testified the scaffolds which led to him pulling his body apart were only removed a week before. So is this court then going to hold that it only takes a week of repetitive duties to create a repetitive trauma case? I don't think that's what Dr. Fletcher said. Dr. Fletcher said that this guy had a condition, a pre-existing condition that had developed in his trade over years. This particular day was the straw that broke the camel's back. Now, is that a repetitive trauma case or is that a specific injury case? I agree that that's what Dr. Fletcher said, and I don't know the answer to whether it's repetitive trauma or specific injury. I know that the petitioner's testimony is, I specifically grabbed a wire nipper with both of my wrists, and I specifically twisted, and at that very moment, simultaneously, I had pain in both of my hands. Let's assume that's all true. Why is it necessarily inconsistent? Because as Irene Fletcher's position is, a person with severe carpal tunnel syndrome can be asymptomatic until a specific event triggers it. So can't that be the event? Why couldn't he still have carpal tunnel? Absolutely that could be the event, and he could have triggered bilateral carpal tunnel or aggravated it. How, then, do we get a shoulder and elbow claim out of it? How, then, do we get that out of it? When we know that in order to get to the shoulder and elbow, it has to be repetitive stress, and he only did the job for a week beforehand with no scaffolding. Therein lies the rub. That question answers how much TGD gets paid, what medical gets paid, whether it's even reasonable and necessary and related to have a shoulder surgery a year and ten months later. Therein lies the rub here. I'm not suggesting that he couldn't have aggravated a preexisting condition, that he didn't do repetitive work. I'm not suggesting any of that. I'm suggesting that it has to be determined what happened on a day, or if it's repetitive stress, because otherwise you're punishing the respondent. Well, wait a minute. Let me ask you a question. Couldn't it be both? Because Flesher opines within a reasonable degree that not only his bilateral carpal tunnel and his left radial tunnel syndrome were causally connected, but also that his left shoulder impingement was causally connected. Now, he did testify only that this guy had a long history that developed, and this was the straw that broke the camel's back. But couldn't it be the straw that breaks the camel's back on the carpal tunnel and the specific incident that causes the shoulder injury at the same time? Why not? I don't know that there's a mechanism of injury defined in any medical record or in the testimony of the petitioner indicating that at that very moment, he hit or twisted his elbow or hit or twisted his shoulder, and therein is where we dispute this case. I don't necessarily have a big hang-up with the bilateral carpal tunnel syndrome, other than if it's repetitive stress, Dr. Fletcher does opine that any activity of day-to-day living would have brought about the same activity, and twisting a wire nippers is akin to turning a door handle, which is the example used in the testimony of Dr. Fletcher. So that is a defense to the responsibility and culpability of this respondent with that. The other question has to be answered, though, as to whether it's a specific event. As the petitioner insists, or whether it's repetitive, and if it's repetitive, he does not meet the threshold for having done it long enough, repetitive enough, with force enough, if it was only one week with no scaffolding. And it appears to me that the respondent, or not the respondent, I'm sorry, that the commission in this case rests their entire decision on just that one week's work, and it appears to me, which is an issue I've raised in the appeal, that they take that bonus and burden away from the petitioner and kind of turn it on respondent, saying respondent somehow expects petitioner to know the difference between a repetitive stress or a specific incident. And you're right, we do, between consultation with his doctors and his lawyers, absolutely, because we get the right under the law to answer a defense on the case. And in this particular case, we've gone years with trying to figure out what is the accident. If we listen to and believe the petitioner, it's a specific incident, which can't explain a shoulder elbow, because there is no medical causal connection, opinions regarding any sort of trauma or strain or stress. There's not even testimony of pulling or extending or anything. We have the EMGs, which show that the denervation is severe only 17 days post-claim of accident. We have Dr. Walsh, who regardless of what people think of Dr. Walsh says, it's a medical impossibility to even get nerve denervation in 17 days. So we have a severely degenerated condition, and we have a real question as to what happened. Under the evidence, an asymptomatic degenerative condition. Correct. I have nothing to tell you that needs to be wired to me. There's no indication that he'd been to any doctor before or made any claim or had any treatment or anything about this before he was working for this employer and doing the job that he's described as when he got symptoms. You are absolutely correct. What we have is a knowledge that he was being laid off, a bad economy with no work, differing, changing history. That's just all innuendo. It is. There's no evidence that that had anything to do with him making a claim when he did. You want to say, oh, he's trying to get money out of the company because he was about to get laid off. There's no evidence of that. It's just innuendo. I'll tell you what there is evidence of. There is evidence that he changed even that story later to his medical providers and in his testimony at trial and his attorney used it in his brief to say he was intentionally laid off as a result of being injured at work. That's innuendo too. Well, it's not innuendo because we have the Malha April 8th medical record. He and his supervisor say to his doctor his entire shift is being laid off at the end of the week. We have actual medical evidence and documentary evidence and witness evidence in that medical record that's been accepted as evidence in this case which says he knew he was being laid off. Was that the company doctor? I don't believe Malha is the company doctor, but I don't have that answered, so I can't. I mean, how do we know the boss wasn't saying to the company doctor, this guy's getting laid off in a week. Actually, I believe we have testimony from the petitioner that the boss tried to take him to the company doctor which was closed that day and therefore they opted to go to Springfield Clinic which was Malha. So this was not a company position or plan. We have a couple of other issues that we've raised and they all go line in line with this. The TTD we believe should have been cut off at March 10th if you find a repetitive stress case or a simultaneous injury to the wrist, however, because he was released from all care and treatment at MMI on his bilateral wrist surgeries and his elbow by March 10th, 2010. So if you find that he sustained a shoulder injury because of repetitive duties after working one week without scaffolding, then obviously the petitioner's argument that he needed to be released from the shoulder before he could be at MMI would be the argument that you would adopt in this case. Let me ask you a question about your argument on the medical bills. You argue that the petitioner's getting a windfall here and Petitioner's Exhibit 14 sets out all of the medical bills, but at least I can't really determine from that how much was paid, where it came from. I agree with you. Okay. And he testified about that, but he didn't really clarify. He just said where it was paid some. So we really don't know from this. You know, honestly, my response to that is the only thing I would love to have seen in the commission's decision. Instead of where they wrote, it is further worded by the commission that Respondent paid to Petitioner some of $60,700.41, I'd rather have them say Respondent is responsible for any and all reasonable related medical care subject to the fee schedule of the Act and or lesser negotiated rates. We're entitled to that. That's what I was going to ask you. The arbitrator ordered the same amount, but then added Respondent shall have credit for any of the medical which it previously paid including any payments made to the union health insurance. But that is not included in the commission decision. I mean, that's your problem. That's my problem. I mean, the commission just flat out says paid $60,700. So it's kind of unclear. It is unclear. And we would like that clarified because we believe the Act is very clear on that, that we are entitled to those credits and to a lesser negotiated rate if the Blue Cross or Blue Shield or whoever the group was, was able to negotiate those further down below the fee schedule. So we have a task that we're asking. We're asking that you reverse the commission finding that there is no accident established and that the burden is on the petitioner to establish that date of accident or how the accident happened or with any specificity which he has not here. In the alternative, if you find that there is an accident, we are asking that you determine what type of an accident there was, whether it was a specific trauma or repetitive motion, because we believe that will guide your judgment in terms of reasonable necessary medical, TTD, and MMI dates in this claim. Thank you. Thank you, Counsel. Please record. Counsel, my name is David Moss. I'm representing Larry Richards in this case. On March 26, 2009, Mr. Richards was found to have sustained what the commission and the arbitrator characterized as a cumulative trauma injury. The facts and specifics regarding his work duties are not in dispute. And yet, Counsel has suggested that there is some dispute, some question, as to what Mr. Richards would be in an agent, what job duties he was performing. The job duties admittedly began with his employment in February 2, 2009 with the employer. And the record is exhaustive in its description of exactly the job duties that he has done. Specifically, he has talked about and the medical providers have documented the use of the wire cutters, the cutting of the mesh, the bolting of the mesh onto the power plant walls, the wrapping of the insulation around the pipes. The fact that this job was coming to an end and the workers were getting the site ready to start up, as the petitioner testified, and so scaffolding was being removed and he, Larry, was climbing around the pipes to finish up this job. As kind of an aside, I'd ask everybody to look at the Mohawk record for April 8, 2009. The suggestion that the claimant was anticipating a layoff simply is not in that record. That record shows this was the case. I don't think you ought to worry about us being hung up in any way. Okay. We've clarified that. But let me ask you some specific questions. Yes. He says, well, you know, the claimant believes this is a specific accident, specific incident injury case. The commission going off on a tangent and found repetitive trauma. And then he further asks, as a secondary, how do you get repetitive trauma in a week? So could you answer those questions? Yes, I can. Actually, that was the first question I anticipated being asked. We're using the word repetitive and cumulative interchange. And I think there's a distinction between these two types. I think when the commission is saying this is a cumulative, let me back up. The commission is saying this is a cumulative slash repetitive. Dr. Fletcher characterizes it as a cumulative trauma situation. He has used that as a formal description. When I'm addressing a repetitive trauma case, and I don't mean to be flippant, I'm thinking of Lucy and the Chocolate Factory. A slave to an assembly line. A constant, repetitive, forceful, grasping, twisting situation. When I'm talking about a cumulative trauma, I'm dealing with a case very similar to this. You do not develop carpal tunnel syndrome in a week. And this is exactly what the employer's argument is. But you can engage in a series of strenuous work activities, which, as Dr. Fletcher says, in this case was the straw that broke the camel's back. Was the trigger. You can be asymptomatic as a result of the cumulative effect, and there can be a specific incident that causes the manifestation, even though the condition was built up over a period of time. And I think this is why Bagot and the other cases talk about you find the employee. Let's assume that's correct, perfectly logical, and that is consistent with Fletcher's opinion. What about the issue of the shoulder, though? He says that can't be an issue. Well, and I think the substance of the evidence is, and this is another thing that has been brought up about the variances of the complaints and descriptions to the different doctors, and I believe he's talking to the shoulder doctors about his shoulder complaints, and he's emphasizing, I'm climbing around on these pipes, I'm wearing a belt, they've taken down the scaffold, a lot of monkey work is as he cares. And that's a week, though, correct? Well, I believe the record talks about him doing that more than that, more than that. I think it says three to four weeks that he was working in terms of the scaffolding being down. I'm sorry, as of March 26, 2009, the petitioner testified he had been doing the bolting work for three to four weeks, and he had probably been climbing around the pipes doing the insulation for about a week before that. Okay, all right. Well, I had the sense that he was doing it more. So what's your take on his position? Well, he comes in initially with his initial complaints, saying, I noticed numbness and tingling in my hand. That was his initial complaint. Well, you carry on and work, and I believe it's during this period of time, he's now doing the climbing work, and he comes back and says, not only are my hands and arms numb and tingling, but now I have pain in my elbow and in my shoulder. And in asking Dr. Fletcher, well, based on everything that has been told, based on the job description, based on the job history that's been provided, is the shoulder, this is why you ask it separately, is the shoulder causally connected to this job, to this activity? Fletcher gave the causal connection opinion? Yes, he did. And what theory? Was it the cumulative effect again, specific? He perpetually said, we're talking about a cumulative effect. On both conditions? On all conditions. All right. As I've read his testimony, yes. So consequently, this is the difference, to answer your question, between a repetitive and a cumulative trauma case. This is identified by the commission as a cumulative trauma, at least they use the term cumulative trauma in conjunction with repetitive trauma. And the arbitrator has found that these cumulative conditions were sufficient to support a finding on all four complaints, left and right, shoulder tendinosis and elbow hepatitis. Are you aware of any authority that says that the claimant believes it's a specific incident causation and the claimant believes that? Is there anything in the law that prohibits the commission from finding a repetitive trauma? I have never heard this issue before, no. Sort of a novel argument. It is. So consequently, I'm asking the court to affirm the commission. I'm asking the court to affirm the commission's affirmance of the arbitration. And if there are no other questions. Quick question about the medical bills. Yeah. The same question I asked. I mean, there is a difference in the arbitrator's award and the commission's. You know, I mean, I've looked at this Petitioner's Exhibit 14. I can't tell from that how much was paid and by who or which bills. Justice, I'm so sorry. We've labored so long to try to make that cover and that exhibit clear to everybody. We try to show all of the medical providers and the full amount of their bills. We try to have a column that shows health workers' compensation. Well, I mean, there's the first about 10 on the list. It shows the total. Then you've got workers' comp paid or health link paid or client paid. And there's nothing under any of those. And then it's got a balance zero. How do we know who paid what there? I looked at that again, and I understand exactly. But my point is, I mean, the arbitrator specifically said that they're entitled to credit. The commission, though, said we modify the arbitrator as stated below. And then they just say you're ordered to pay $60,700. Now, I think below that they say something about a credit. Because I think in my brief, I was… Well, they say generally the respondent shall have credit for all amounts paid. If any two are wrong, we have to petition on account of said accidental injury. It's just… Mr. Sink is used to dealing with more nefarious attorneys. I guess, Bob, as you're saying, they are entitled to credit. How do we tell from the record how much? Well, that's a good question. That's the problem. Again, I had hoped that exhibit was a little more detailed than obviously it is. Yes, I mean, certainly, this is an accounting situation. Certainly, if the bill has been paid by the comp carrier, they don't have to pay it twice. If it's been paid by the group carrier, they get a credit. And if there's a balance, again, we wonder if the fee schedule will eliminate that. So, you're not saying that your client's entitled to $60,000? No. Okay, so maybe it's something you can work out. Yeah. In talking about this before the hearing today, I told you my philosophy is that when you go to litigation, you seek an award for the full amount. And then that full award may be subject to severance. So, no, no, I'm not trying to get, okay, double or triple credit. Okay, thank you, counsel. Counsel, you may reply. Mr. Sink, I mean, keep in mind that Mr. Moss is opining that general skepticism should not apply to him. Right. And I told Mr. Moss beforehand, I'm not necessarily worried about you, but what if your client sues me for $60,000? You're downstate. Right. I'm a Chicago guy, so we're heated. I want to just re-reiterate and re-point out that there were MRIs and DMGs done on the shoulder and the elbow of the petitioner, and they were normal. Negative DMG on the elbow, which showed no lateral epicondylitis, and a negative MRI on the shoulder. The petitioner underwent arthroscopic surgery still a year and 10 months later, and when he underwent surgery, the surgical report notes specifically there are no tears, no ligament damage, no rotator cuff damage. The only thing there was a preexisting spur, so they shaved the spur down. And so, again, we get to that question. If the petitioner testified, at no time during my employment with API did I ever feel a pull, a pop, a sensation, or pain in my shoulder, in my elbow, and he did say that about his wrists, how do we get to an injury which warrants 25% loss of use of the shoulder and 5% loss of use of the elbow in a case where he wants you all to believe was a specific trauma grabbing a wire nippers with both wrists when he twisted it and simultaneously had numbness and tingling in both bilateral hands. I can get that. You see what I'm saying? I don't know how you get to the rest. If he testified he never had a pain in his shoulder or elbow, never had a pull or pop, and I would just ask you to consider his testimony in its whole with the medical records in coming to your decision. I thank you very much for your time. If there are no questions. There are none. And thank you, Counsel Bolt, for your argument. This matter will be taken under advisement. I take this position as issued.